UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

|  |  |  |
|---|---|---|
| DENETRA C. MURRAY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-718 |
| | ) | |
| v. | ) | Honorable Phillip J. Green |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **OPINION** |
| Defendant. | ) | |
| ———————————— | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI) benefits. On June 16, 2010, plaintiff filed her applications for DIB and SSI benefits. (Page ID 222-32). She alleged an April 4, 2009, onset of disability.[1] (Page ID 222, 229). Her claims were denied on initial review. (Page ID 150-67). On November 1, 2011, plaintiff received a hearing before an ALJ, at which she was represented by counsel. (Page ID 83-126). On November 23, 2011, the ALJ

_____

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, July 2010 is plaintiff's earliest possible entitlement to SSI benefits.

issued her  decision finding that plaintiff was not disabled.  (Page ID 64-78).  On April 30, 2013, the Appeals Council denied review (Page ID 31-33), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (Dkt. 16).  Plaintiff asks the Court to overturn the Commissioner's decision on the following grounds:

1. The ALJ factual finding regarding plaintiff's RFC is not supported by substantial evidence.

2. The ALJ "improperly discounted" the opinions of a treating psychologist.

3. The ALJ failed to consider and evaluate a consultative examiner's opinion.

4. The ALJ's factual finding regarding plaintiff's credibility is not supported by substantial evidence because the ALJ "improperly dismissed the claimant's allegations about her mental limitations without offering a supported rationale, as required by SSR 96-7p."

5. The ALJ "erred by erroneously evaluating [plaintiff's] headaches and failing to account for this impairment in her RFC findings."

(Plf. Brief at 1, Dkt. 17, Page ID 664).  The Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law.  *See Elam ex rel. Golay v.*

*Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports

the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## Discussion

The ALJ found that plaintiff met the disability insured requirement of the Social Security Act from April 4, 2009, through the date of the ALJ's decision. (Op. at 3, Page ID 66). The work that plaintiff had performed after her alleged onset of disability generally did not rise to the level of substantial gainful activity.[2] (*Id.*). Plaintiff had the following severe impairments: "a Type II bipolar disorder, a generalized anxiety

---

[2]"Administrative law judges employ a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

Plaintiff "performed work after the alleged onset date as a hairdresser and a fast foods worker (Exhibit 6D and Hearing Testimony). Combined, the claimant earned $9,254.01 during the 2009 calendar year, and [$]12,221.05 during the 2010 calendar year. (*Id.*). After reviewing the average monthly income levels allowed, the 2009 amount falls below that year's average monthly income level of $980.00; however, the 2010 amount exceeds the 2010 average monthly income level of $1000.00." (Op. at 3, Page ID 66). The ALJ elected not to deny plaintiff's claims at the first step of the sequential analysis. (*Id.*). She found that plaintiff was not disabled at steps 4 and 5 of the sequential analysis.

-4-

disorder (GAD), a personality disorder, the late effects of a left lateral collateral ligament repair, and a substance abuse disorder."[3] (*Id.* at 4, Page ID 67). Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listing of impairments. (*Id.* at 5, Page ID 68). The ALJ found that plaintiff retained the residual functional capacity (RFC) for a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is limited to understanding, remembering, and carrying out simple instructions, and brief and superficial contact with the general public. Furthermore, the claimant is capable of maintaining adequate attention and concentration for simple instructions, and she [can] manage stresses and changes found in a routine, simple work setting.

(Op. at 8, Page ID 71) (footnote omitted). The ALJ found that plaintiff's testimony regarding her subjective complaints was not fully credible. (*Id.* at 8-12, Page ID 71-75). The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis because she was capable of performing her past relevant work as a

---

[3]Plaintiff has a history of substance abuse. Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. See 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to her disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability. *See Gayheart v. Commissioner*, 710 F.3d at 380.

housekeeper/cleaner and a small products assembler as those jobs are generally performed in the national economy. (*Id*. at 12-13, Page ID 75-76).

Alternatively, the ALJ found that plaintiff was not disabled at step 5 of the sequential analysis. Plaintiff was 32 years old as of her alleged onset of disability, 33 years old when she filed her applications for DIB and SSI benefits, and 34 years old as of the date of the ALJ's decision. Thus, plaintiff was classified as a younger individual at all times relevant to her claims for DIB and SSI benefits. (*Id*. at 13, Page ID 76). Plaintiff has at least a high school education and is able to communicate in English. (*Id*.). The ALJ found that the transferability of job skills was not material to the determination of disability. (*Id*.).

The ALJ then turned to the testimony of a vocational expert (VE). In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there were approximately 461,000 jobs in the national economy that the hypothetical person would be capable of performing. (Page ID 116-21). The ALJ found that this constituted a significant number of jobs. Using Rule 202.21 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (Op, at 13-15, Page ID 76-78).

## I.    Step 3 of the Sequential Analysis

Plaintiff argues that the ALJ "erred at step three by assessing a mental RFC that is not supported by substantial evidence." (Plf. Brief at 14, Page ID 677). This argument conflates a number of distinct concepts and does not provide a basis for disturbing the Commissioner's decision.

The administrative finding whether a claimant meets or equals a listed impairment is made at step 3 of the sequential analysis. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Step-3 regulates a "narrow category of adjudicatory conduct." *Combs v. Commissioner*, 459 F.3d 640, 649 (6th Cir. 2006) (*en banc*). It "governs the organization and evaluation of proof of listed impairments that, if supported, renders entitlement to benefits a foregone conclusion." *Id.* A claimant has the burden of demonstrating that she satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125.

By contrast, the administrative finding of a claimant's RFC is made between steps 3 and 4 of the sequential analysis, and it is applied at steps 4 and 5. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. We use the residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").

The ALJ determined at step 3 of the sequential analysis that plaintiff's impairments did not meet or equal the requirements of any listed impairment. (Op. at 5-8, Page ID 68-71). Plaintiff's mental impairments did not come close to satisfying the demanding paragraph B severity requirements of listing 12.04. The ALJ observed that, "To satisfy the 'paragraph B' criteria, the mental impairments must result in at least two of the following: marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of

-7-

extended duration." (Op. at 5, Page ID 68).  The ALJ found that plaintiff had moderate restriction in activities of daily living, moderate difficulties in social functioning, mild difficulties in concentration, persistence or pace, and no episodes of decompensation, and cited substantial evidence supporting each of her findings.  (*Id.* at 5-8, Page ID 68-71).  The ALJ found that plaintiff did not meet or equal the paragraph C requirements of the listing.  (*Id.* at 7, Page ID 70).  Again, the ALJ's factual finding is supported by substantial evidence.

## II.    RFC

Plaintiff argues that the ALJ's factual finding regarding her RFC is not supported by substantial evidence because it "failed to account for" plaintiff's headaches.[4]  (Plf. Brief at 23, Page ID 686).  This argument does not provide a basis for disturbing the Commissioner's decision. RFC is an administrative finding of fact made by the ALJ.  20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3).  RFC is the most, not the least, a claimant can do despite her impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see Branon v. Commissioner*, 539 F. App'x 675, 677 n.3 (6th Cir. 2013); *Griffeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007).  Substantial evidence

---

[4]If plaintiff is claiming that the ALJ committed error by not finding that her headaches constitutes an additional severe impairment, it does not provide a basis for disturbing the Commissioner's decision.  The finding of a severe impairment at step 2 of the sequential analysis is a threshold determination. The finding of a single severe impairment is sufficient to require continuation of the sequential analysis.  *See Maziarz v. Secretary of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The ALJ found at step 2 of the sequential analysis that plaintiff had  severe impairments. The ALJ's failure to find additional severe impairments at step 2 is "legally irrelevant." *McGlothin v. Commissioner*, 299 F. App'x 516, 522 (6th Cir. 2009); *see Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"   *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001). The ALJ's factual finding that plaintiff retained the RFC for a light work, which was limited to "understanding, remembering, and carrying out simple instructions, and brief and superficial contact with the general public" in a "routine, simple work setting," is supported by more than substantial evidence. (*See* Op. at 8-12, Page ID 71-75).

## III.   Credibility

Plaintiff argues that the ALJ's factual finding regarding her credibility is not supported by substantial evidence because the ALJ "improperly rejected the claimant's testimony about her mental limitations without articulating a supported rationale." (Plf. Brief at 20-22, Page ID 683-85).   Credibility determinations concerning a claimant's subjective complaints are peculiarly within the province of the ALJ.   *See Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).   It is the ALJ's function to determine credibility issues.   *See Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).   The Court does not make its own credibility determinations.   *See Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).   "Claimants challenging the ALJ's credibility determination face an uphill battle."   *Daniels v. Commissioner*, 152 F. App'x 485, 488 (6th Cir. 2005).

The Sixth Circuit recognizes that meaningful appellate review requires more than a blanket assertion by an ALJ that "the claimant is not believable."   *Rogers v. Commissioner*, 486 F.3d 234, 248 (6th Cir. 2007).   The *Rogers* court observed that

Social Security Ruling 96-7p requires that the ALJ explain his credibility determination and that the explanation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248. Here, the ALJ gave a lengthy, and detailed explanation why she found that plaintiff's testimony was not credible. (Op. at 8-12, Page ID 71-75). The ALJ's factual finding regarding plaintiff's credibility easily passes appellate review under the deferential substantial evidence standard.

## IV.    Treating Physician Rule

Plaintiff's primary argument is that the ALJ committed reversible error when she failed to give controlling weight to the opinions of Psychologist Ellis-Chopin, a limited license psychologist and a certified alcohol and drug addiction counselor. (Plf. Brief at 14-19, Page ID 677-82).

The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner.   20 C.F.R. §§ 404.1527(d)(1) 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).   A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *see also Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the

Commissioner, not the treating physician."). Likewise, "no special significance"[5] is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Gayheart v. Commissioner*, 710 F.3d 365, 376 (6th Cir. 2013) (A treating physician's medical opinion is entitled to controlling weight

---

[5]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. § 404.1527(d)(3), 416.927(d)(3); *see Blankenship v. Commissioner*, No. 14-cv-2464, __ F. App'x __, 2015 WL 5040223, at * 9 (6th Cir. Aug. 26, 2015).

where "two conditions are met: (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" (citing 20 C.F.R. § 404.1527(c)(2)).

The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir.

2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

A.   <u>Psychologist Ellis-Chopin</u>

A review of the medical care that plaintiff received during the periods at issue, April 4, 2009, through November 23, 2011, on her claim for DIB benefits and June 16, 2010, through November 23, 2011, on her claim for SSI benefits, is necessary to address plaintiff's arguments based on the RFC questionnaire completed in September 2011 by Psychologist Ellis-Chopin within the context of the administrative record as a whole.[6]  Plaintiff did not begin seeing Psychologist Ellis-Chopin until June 13, 2011, two years after plaintiff's  alleged onset of disability.  Plaintiff has no history of hospitalization for any mental impairment.

Plaintiff's medical records "from all of 2009 fail to document any mentally related complaints or symptomatology." (Op. at 10, Page ID 73).  On December 17, 2009, plaintiff appeared at the Lakeland Regional Health emergency department (Lakeland) complaining of the "worst headache ever."  She was not in any acute

---

[6]Records predating the periods at issue are "minimally probative" and are considered only to the extent that they  illuminate the claimant's condition during the relevant time periods.  *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988); *Siterlet v. Secretary of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *see also Van Winkle v. Commissioner*, 29 F. App'x 353, 358 (6th Cir. 2002).

distress, and she was alert and oriented in all three spheres.  She appeared well-nourished and hydrated and was independent in her activities of daily living.  Plaintiff was cooperative and gave appropriate responses to questions.  She denied use of alcohol or drugs, but conceded that she did smoke one-half pack of cigarettes per day.  Doctors at Lakeland conducted an extensive series of tests.  A CT of plaintiff's head returned normal results.  A lumbar puncture revealed that plaintiff's spinal fluid was normal.  Physician's Assistant Keith Lovell gave plaintiff prescriptions for narcotic pain medication and offered a diagnosis of a migraine headache.  He addressed a note to plaintiff's employer stating that plaintiff could return to work on December 20, 2009.  (Page ID 427-49).  On December 21, 2009, plaintiff returned to Lakeland.  She was diagnosed as having a "post-spinal tap headache" and she received additional prescription pain medication.  (Page ID 420-25).

On February 19 and 23, 2010, plaintiff received treatment at Lakeland for a left eye sty.  On both occasions, physician's assistants reported to plaintiff's employer that she was capable of returning to work within a day or two after treatment.  (Page ID 405, 415).

Plaintiff next appeared at  Lakeland on March 18, 2010.  She reported that she had a headache.  On this occasion, she indicated that she drank alcohol on an occasional basis and did not use drugs.  (Page ID 388).  She reported that she smoked ½ pack of cigarettes per day.  Plaintiff was alert, oriented, and in no acute distress.  She gave appropriate responses to questions and her speech was normal.  Plaintiff was independent in her activities of daily living and appeared well.  Plaintiff related that

-14-

she was having problems with her teenage son, and that she had taken Vicodin and Flexeril and had experienced only "partial relief" from her headache.  Plaintiff was diagnosed with a "tension headache" stemming from "situational stress."  Edward Lutkus, M.D., gave plaintiff prescriptions for Flexeril and Vicodin.  (Page ID 388-95).

On April 14, 2010, plaintiff appeared at the BH Lee Walk-in Clinic (Lee Clinic) and reported to Sangeeta Pal, M.D., that she was experiencing headaches when she was "taking a lot of medications."  Dr. Pal suspected "medication overuse," but had a MRI performed to rule out the possibility of a tumor.  (Page ID 335).

On April 19, 2010, plaintiff returned to Lakeland.  She complained that she had a headache.  Plaintiff appeared well and was in no acute distress.  She was independent in her activities of daily living.  She denied experiencing anxiety or depression.  She reported that she did not use alcohol or drugs.  (Page ID 380, 382).  Doctors at Lakeland determined that the headache that plaintiff described did not have a serious underlying cause, and was most likely a tension headache.  (Page ID 386).

"It was not until May 2010, that the first note of anxiousness was observed." (Op. at 10, Page ID 73).  On May 27, 2010, plaintiff appeared at Lakeland with "multiple complaints," including headache and "anxiety." (Page ID 366).  She reported that she used marijuana and smoked ½ pack of cigarettes per day.  She was independent in her activities of daily living and her hygiene was appropriate.  She was oriented all three spheres and in no apparent distress.  Plaintiff stated that she was experiencing anxiety "due to problems with her son."  X-rays of plaintiff's heart and

lungs returned normal results.    A physician's assistant gave plaintiff three prescriptions:  Ativan for anxiety, Ultram for pain, and Promethazine for nausea. (Page ID 366-79).

On June 3, 2010, plaintiff returned to the Lakeland complaining that she ran out of Ativan and experienced a "panic attack."  She reported that she did not use alcohol or drugs.  She conceded that she smoked marijuana and one-half pack of cigarettes per day.  Plaintiff appeared well and she was independent in her activities of daily living.  Plaintiff was oriented in all three spheres.  She complained of chronic back pain and a headache.  Plaintiff stated that she had "been on Paxil before with success."  Plaintiff was diagnosed as having "Ativan withdrawal symptoms."  Dan Chaffee, M.D., gave plaintiff prescriptions for Xanax and Paxil.  (Page ID 357-64).

On June 11, 2010, plaintiff returned to the Lee Clinic and received treatment from Teresita Villasis, M.D.  Plaintiff gave the following reasons for her recent anxiety: "[T]he patient's 14-year-old son was at the Berrien County Juvenile Detention Center locked up because of suicidal ideation and behavior problem.  The patient is upset about this.  Apparently is having anxiety causing the patient [to have] problems sleeping at night."  (Page ID 337).  Dr. Villasis gave plaintiff prescriptions for Xanax and Paxil.  (Page ID 337).   On June 16, 2010, plaintiff filed her applications for DIB and SSI benefits.

On June 23, 2010, plaintiff appeared at Lakeland complaining that a few days earlier she had twisted her left ankle.  (Page ID 346).  X-rays were "negative for fracture."  (Page ID 356).  Plaintiff was diagnosed as having a soft tissue sprain or

strain.  (Page ID 339).  She received a prescription for Vicodin and instructions on how to care for her sprained ankle.  (Page ID 350-55).

On August 10, 2010, plaintiff appeared at the Lee Clinic.  She "[denie[d] any history of alcohol abuse or any smoking."  (Page ID 495).  She walked with a normal gait.  She had no sensory deficits, swelling or edema. (Page ID 496).  The CT of plaintiff's head on August 16, 2010 returned "[u]nremarkable" results.  (Page ID 513).

On September 26, 2010, Anne Kantor, a limited license psychologist, performed a consultative examination.  (Page ID 478-84).  Plaintiff had a long history of legal problems which included being sent to a juvenile center on three occasions.  More recently, she had been incarcerated in the Berrien County Jail for "bad checks" and maintaining a drug house.  She stated that her case was closed and that she had not experienced legal problems in almost two years.  She admitted that she had used and continued to smoke marijuana.  She stated, "I still use it to . . . uh . . . help my appetite."  (Page ID 478-79).  She reported that she had recently started taking medication for depression and anxiety.  She stated that Dr. Villasis was her physician.  Plaintiff was cooperative throughout the evaluation.  She stated that she did her own shopping, cleaning, cooking, and laundry.  She related that although her driver's license had been  suspended when she "caught the drug case," she continued to drive when she could borrow a car.  (Page ID 480).  Plaintiff complained of stress related to her teenage son's behavior.  (Page ID 478).

Plaintiff was oriented in all three spheres.  Her stream of mental activity was spontaneous and adequately organized.  Plaintiff was "very focused on herself and her

symptoms, but her affect was appropriate throughout the interview." (Page ID 481). Kantor stated: "The patient did not report nor did I observe any symptoms that lead to the diagnosis of bipolar disorder. She is capable of understanding, remembering and carrying out instructions and making decisions regarding work-related matters. However, she has no history of long term employment and is likely to continue to have moderate to marked difficulty succeeding in the workplace due to factors associated with her chronic depression, anxiety, and personality traits." (Page ID 483). Psychologist Kantor offered a diagnosis of cannabis abuse, dysthymic disorder, generalized personality disorder, and a personality disorder, not otherwise specified. (Page ID 483).

The ALJ noted that following the September 2010 consultative examination by Psychologist Kantor, "the record does not include any mentally related information until January 2011, at which time the claimant again reported that her Paxil was helping with her anxiety issues." (Op. at 11, Page ID 74; *see* Page ID 491-92).

On October 4, 2010, Psychologist George Starrett reviewed the then-available evidence and offered his opinion that plaintiff had moderate limitation in activities of daily living and in social functioning, mild difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. (Page ID 154, 163). He also offered an opinion that plaintiff was capable of performing simple work which involved limited interaction with the general public. (Page ID 158, 163).

On February 10, 2011, plaintiff returned to Lee Clinic for treatment of a left ankle problem. She denied alcohol use and a history of IV drug use, but did relate a

history of smoking "a half pack a day for the past 11 years." (Page ID 486). Michael Maskill, DPM, reviewed the results of plaintiff's MRI. It showed "no evidence of occult fracture or dislocation." In light of the other minimal findings on the MRI, Dr. Maskill recommended that plaintiff undertake "physical therapy for ultrasound, iontophoresis, and peroneal strengthening to see if she [could] gain any symptomatic relief[.]" (Page ID 487). Plaintiff's response was that she did not want physical therapy whatsoever. She wanted to "completely bypass physical therapy" and proceed with surgical intervention. (Page ID 487).

On March 25, 2011, plaintiff appeared at the Lee Clinic complaining of pain in her right foot. She reported that 2 days earlier, she had dropped a television stand on her right foot and injured a toe. (Page ID 605). Dr. Villasis found that plaintiff had no sensory or motor deficits. Her toe had mild bruising and swelling. Plaintiff was advised to elevate her foot and apply ice. (Page ID 605-06).

Plaintiff had surgery performed on her left ankle in April 2011. (Page ID 524-25). On May 3, 2011, plaintiff returned to Dr. Maskill "for her week postop appointment." He noted that plaintiff had been "extremely noncompliant" in her postoperative conduct:

> She has been weightbearing against medical advice. She has taken both her splint off and her cast off. She went to the ER in St. Joseph, in which they removed the cast, put in a splint. She has removed the splint, presents in regular shoe gear with crutches. She does admit to weightbearing. She understands that she may be compromising her results.

(Page ID 520). Dr. Maskill advised plaintiff that she needed to "remain completely non-weightbearing." He placed plaintiff's foot in a pneumatic boot and she was "advised to remain completely non-weightbearing for an additional 3 weeks." (Page ID 520-21).

When plaintiff returned on May 31, 2011, she presented "bearing full weight in a pneumatic boot against medical advice." (Page ID 578). Dr. Maskill noted that plaintiff had been advised "numerous times to be non-weightbearing." plaintiff expressed understanding tat she was compromising the post-operative result. Despite plaintiff's violation of Dr. Maskill's instructions, there was no evidence of hardware failure and her ankle appeared to be in stable anatomic alignment. Dr. Maskill directed plaintiff to start physical therapy. He gave her a prescription for a muscle relaxer "as she feels she has muscle spasms every now and again that are painful." She also received a refill of a Vicodin prescription. (Page ID 518-19).

On June 13, 2011, Psychologist Ellis-Chopin met with plaintiff. Plaintiff reported that she had a history of "3 ER visits for panic attacks." (Page ID 541). She indicated that her most recent use of marijuana had been three days earlier. In addition, she stated that she had a history of "self-medication" by using Zoloft and Lamictal prescribed for her friends. (Page ID 542). Plaintiff related that she was currently taking four prescriptions prescribed by three different doctors: Xanax and Paxil prescribed by Dr. Chaffee, Vicodin prescribed by Dr. Maskill, and Ranitidine prescribed by Dr. Villasis. (Page ID 542). Plaintiff reported that she was single, never married, and had children ages 15, 13 and 7. The only "legal history" that plaintiff

-20-

disclosed was her 2003 conviction on domestic assault charges. (Page ID 543). She did not inform Psychologist Ellis-Chopin of her more recent legal problems stemming from operating a drug house. Ellis-Chopin offered a diagnosis of "Bipolar II." (Page ID 544).

The psychologist conducted a total of six therapy sessions with plaintiff: June 14, 15, 21, 22, July 7, and August 4, 2011. These sessions generally resulted in no progress or minimal progress. (Page ID 534-39). The sessions were conducted in plaintiff's home, and on most occasions the residence appeared "neglected." On August 4, 2011, Psychologist Ellis-Chopin wrote that someone had "moved into [a] new house." Her note is not clear on whether she was referring to plaintiff or her son. (Page ID 534). Plaintiff's son did not respect her authority and Ellis-Chopin characterized their conflict as "chronic." (Page ID 534, 537).

On June 20, 2011, plaintiff appeared at Lakeland complaining of a headache and neck discomfort. She reported that she did not use alcohol or drugs, but continued to smoke cigarettes. (Page ID 574). She was alert and in no obvious distress. Her psychological examination was normal. She was cooperative. Her speech was normal and her responses to questions were appropriate. (Page ID 574).

Plaintiff returned to Dr. Maskill on July 26, 2011, with complaints of left ankle pain. He noted that the surgical repair had healed well despite the fact that plaintiff had been noncompliant with full weightbearing against medical advice during the entire postoperative period. Plaintiff had not attended physical therapy as advised. Dr. Maskill informed plaintiff that she would not be receiving any refills of pain

-21-

medication.  Her discomfort was caused by her noncompliance.  Future prescriptions would be restricted to anti-inflammatory medication.  (Page ID 516-17).

On August 22, 2011, plaintiff appeared at Lakeland complaining of lower back and neck pain.  She was alert and not in any acute distress.  She was independent in her activities of daily living.  She reported that she smoked and drank alcohol, but did not use drugs.  (Page ID 564).  Plaintiff received a Vicodin prescription.  (Page ID 565).

On September 7, 2011, Psychologist Ellis-Chopin completed a RFC questionnaire for plaintiff's attorney.  (Page ID 556-60).  It appears this document was intended as an opinion regarding plaintiff's RFC as of September 7, 2011, because no  response provided indicated that the proffered RFC restrictions applied  retroactively to earlier time periods.  (*Id.*).  The psychologist offered a diagnosis of Bipolar II mood disorder and "mild" cognitive impairment.  (Page ID 556).  She offered her opinion that plaintiff had "no useful ability to function" in completing a normal workday and workweek without interruptions from psychologically based symptoms.  In addition, she stated that plaintiff was "unable to meet competitive standards" in all the following areas: remember work-like procedures, maintain attention for two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain ordinary work routine without special supervision; work in coordination with or in proximity to others without being unduly distracted; perform at a consistent pace without an unreasonable number and length of rest periods; respond appropriately to changes in a routine work setting; deal with normal work stress, understand and remember detailed instructions, carry out detailed instructions, set realistic goals of

-22-

make plans independently of others, deal with stress of semiskilled or skilled work, and use public transportation.  (Page ID 558-59).  Dr. Ellis-Chopin offered an opinion that, if plaintiff had been working, she would likely be absent more than four days per month.  (Page ID 560).  She made no mention of plaintiff's ongoing use of marijuana.  In response to a question whether substance abuse contributed to the limitations she suggested she wrote that she was "not sure," but did not think so.  She stated, without further explanation, that substance abuse did "nothing more than <u>decrease</u> mood episodes."  (Page ID 560).

On September 16, 2011, Dr. Villasis indicated that plaintiff lived on an independent basis with her family.  Her cognitive abilities were described as alert and oriented.  Plaintiff was able to ambulate independently.  (Page ID 604).

On October 7, 2011, plaintiff appeared at the Lee Clinic complaining of a headache.  Plaintiff reported that Psychiatrist Geetha Dhatree[7] was her treating

_____

[7]Plaintiff's treating psychiatrist's full name is Geetha Dhatreecharan.  Plaintiff elected not to present any records from Psychiatrist Dhatreecharan to the ALJ.  The Court's review is limited to the evidence that was presented to the ALJ.  The Court cannot consider the evidence that plaintiff submitted in support of her application for discretionary review by the Appeals Council (Page ID 610-59), including the evidence from Dr. Dhatreecharan.  *See Ferguson v. Commissioner*, 628 F.3d 269, 276 (6th Cir. 2010); *see also Cox v. Commissioner*, No. 14-6243, __ F. App'x __, 2015 WL 3621451, at * 7 (6th Cir. June 11, 2015) ("A court cannot consider such a belated submission when reviewing an ALJ's decision.").  Plaintiff has not requested a remand for consideration of new evidence under sentence six of 42 U.S.C. § 405(g), much less has she carried her burden of proving that such evidence is new, material, and that there was good cause for her failure to present this evidence to the ALJ before she made her decision.  *See Ferguson*, 628 F.3d at 276; *see also Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014).  If plaintiff had made such a request, it would certainly have been denied because the evidence is not new.  Dr. Dhatreecharan was plaintiff's treating psychiatrist months before the ALJ issued her decision on November 23, 2011.  (*see*

physician for anxiety, depression, and bipolar disorder.  (Page ID 602).  Plaintiff reported that her next appointment with Dr. Dhatree was scheduled for December 6, 2011. (Page ID 603).  Plaintiff was advised to follow-up with Dr. Villasis regarding her various pain complaints.  (Page ID 603).  She received a prescription for Vicodin with no refill for her headache complaints.  With regard to plaintiff's complaints of chronic insomnia, Dr. Chang advised plaintiff to stop drinking Mountain Dew and gave her a prescription for Ambien.  (Page ID 603).

On November 23, 2011, the ALJ issued her decision finding that plaintiff was not disabled.  The ALJ considered Psychologist Ellis-Chopin's opinions regarding plaintiff's RFC.  The ALJ found that the extreme limitations that she suggested were not well supported by objective evidence and were inconsistent with the record as a whole.  (Op. at 10-12, Page ID 73-75).  The ALJ's findings are supported by substantial evidence.  The Court finds no violation of the treating physician rule.

## B.  Psychologist Kantor

The treating physician rule did not apply to the opinions of Psychologist Kantor because she was a consultative examiner.  The opinions of a consultative examiner are not entitled to any particular weight.  *See Peterson v. Commissioner*, 552 F. App'x 533, 539 (6th Cir. 2014); *Norris v. Commissioner*, 461 F. App'x 433, 439 (6th Cir. 2012). Plaintiff argues that the ALJ should have expressly discussed and given  weight to a sentence in Dr. Kantor's report suggesting that plaintiff would likely have difficulty in

Page ID 611-17).  Suffice it to say that if Dr. Dhatreecharan's records could be considered, they would not provide support plaintiff's claims for DIB and SSI benefits.

the workplace stemming from her personality traits and psychiatric impairments. (Plf. Brief at 19-20, Page ID 682-83; Reply Brief at 3, Page ID 705).

Plaintiff's burden on appeal is much higher than identifying pieces of evidence on which the ALJ could have made a factual finding in her favor. The Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ. *Jones v. Commissioner*, 336 F.3d at 477. Further, it is well established that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir.2005); *see Boseley v. Commissioner*, 397 F. App'x 195, 199 (6th Cir. 2010); *Decheney v. Commissioner*, No. 1:13-cv-1302, 20145 WL 4526836, at * 9 (W.D. Mich. July 27, 2015). The ALJ is responsible for weighing psychological opinions. *See Buxton*, 246 F.3d at 775; *see also Reynolds v. Commissioner*, 424 F. App'x 411, 414 (6th Cir. 2011) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."); *accord White v. Commissioner*, 572 F.3d 272, 284 (6th Cir. 2009).

The ALJ considered the results of Dr. Kantor's consultative examination. (Op. at 10-11, Page ID 73-74). Among other things, the ALJ noted evidence that suggested that plaintiff's statements to Dr. Kantor regarding the severity of her mental impairments may not have been reliable, and that Dr. Kantor opined that plaintiff was capable of understanding, remembering, and carrying out work instructions and

making decisions on work-related matters.  (*Id.*).  The Court finds no basis for disturbing the Commissioner's decision denying plaintiff's claims for DIB and SSI benefits.

## <u>Conclusion</u>

For the reasons set forth herein, a judgment will be entered affirming the Commissioner's decision.


Dated:  September 24, 2015     /s/  Phillip J. Green
                                United States Magistrate Judge

-26-